IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**SKY BARRETT, Individually and on**                                           **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                              No. 3:18-cv-167-DPM

**NESTLE USA, INC., and**                                                         **DEFENDANTS**
**NESTLE PREPARED FOODS COMPANY**

## JOINT MOTION (WITH INCORPORATED BRIEF) FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS

COME NOW Plaintiff Sky Barrett, individually and on behalf of herself and all others similarly situated ("Plaintiffs") and Defendants Nestlé USA, Inc. and Nestlé Prepared Foods Company ("Nestlé" or "Defendants") and jointly submit this Motion for Preliminary Approval of Class and Collective Action Settlement and Notice to the Settlement Class.

### I.      INTRODUCTION

Plaintiff has reached an agreement to settle this case with Defendants regarding Nestlé's alleged class and collective action violations of the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). The terms of the settlement are contained in the Settlement Agreement ("Agreement") attached as Exhibit 1.[1] Plaintiff and Defendants now wish to begin the settlement approval process outlined in the *Manual for Complex Litigation (Fourth)* §§ 21.632-21.635 (2004). They seek entry of an order:

- Certifying a collective action under the FLSA and a class action under Fed. R. Civ. P.

---

[1] Exhibit 1 also contains a proposed order of preliminary approval, the class notice and claim forms, and an opt-out form.

    23 for purposes of settlement including appointment of Joshua West and Josh Sanford of the Sanford Law Firm, PLLC, as Class Counsel;

- Granting preliminary approval of the settlement;

- Approving the parties' proposed forms and methods of giving class members notice of the proposed settlement;

- Directing that notice be given to class members in the proposed forms and manner; and

- Setting a hearing on _____, 2019 on whether the Court should grant final approval of the settlement, enter judgment, award attorneys' fees and costs to Plaintiff and Class Counsel, and approve a service award to the Named Plaintiff Sky Barrett.

The settlement provides substantial benefits via a Settlement Fund established for the benefit of the class members. A third-party Claims Administrator will administer the settlement claims process, monitored by all counsel. Nestlé will pay for the costs of the Administrator, which includes the cost of the notice by U.S. mail. Nestlé will pay attorneys' fees and expenses and Plaintiff's incentive award if approved by the Court.

The proposed settlement addresses Plaintiff's litigation objectives and falls within the range of possible final approval. The settlement was negotiated by lawyers experienced in complex litigation. For these reasons, the settlement enjoys a presumption of fairness and should be submitted to class members for their reaction.

## II.    <u>SUMMARY OF THE LITIGATION AND SETTLEMENT</u>

###     A.    <u>The Litigation</u>

The *Barrett* case was filed on or about August 30, 2018, in the Eastern District of

Arkansas. Plaintiff asserted claims against Nestlé under the FLSA and AMWA. Plaintiff alleged that Nestlé failed to incorporate monthly and annual bonuses paid to non-exempt production employees at Nestlé's Jonesboro, Arkansas production facility into their "regular rate" of pay for purposes of calculating overtime.

### B. Settlement Discussions

Plaintiff's counsel and counsel for Nestlé have engaged in direct negotiations concerning the possible settlement of all claims, including electronic and in-person negotiation sessions and an informal exchange of individualized damages analyses. On October 19, 2018, the representatives of the parties met in person in Dallas, Texas to begin discussions of a possible resolution of this matter. The parties continued their negotiations over email and the phone and ultimately came to an agreement on material settlement terms on November 8, 2018.

### C. The Terms of the Proposed Settlement

#### 1. Relief Available to Class Members

Under the terms of the proposed settlement, Nestlé will provide significant benefits to the certified FLSA and AMWA classes. The settlement class is comprised of all current and former non-exempt production employees who worked at Nestlé's Jonesboro, Arkansas, facility at any time between January 1, 2016 and July 1, 2018. There are 858 such individuals. Nestlé will create a settlement fund of $26,500. The fund will cover all payment obligations of Nestlé under this settlement other than attorneys' fees, costs and claims administration. Nestlé will pay to each of the 858 Class Members who submit timely claims using the agreed Claim Form and fulfills the conditions of the claims procedure specified in this Settlement Agreement, the amounts contained within Exhibit E to the Settlement Agreement, filed with the Court under seal. The formula the Parties used to determine each Class Member's share of the $26,500

settlement proceeds was based on the actual effect of earned monthly and annual bonuses on each employee's "regular rate" of pay between January 1, 2016 and July 1, 2018. The settlement amounts are fair and reasonable in this case because they are based on the actual effect on each individual's "regular rate" of pay by incorporating earned monthly and annual bonuses throughout the relevant time period.

### 2. Class Notice and Settlement Administration

The parties agree to Notice to the Settlement Class by first-class mail. The Parties selected the Claims Administrator, JND Legal Administration ("JND"). JND has administered similar cases for defense counsel in previous cases, including cases approved by this Court.

Nestlé will pay the costs of the Claims Administrator, which includes the cost of class notice, accounting issues associated with the provision of W-2s to claiming Class Members, processing and distributing settlement checks to claiming Class Members, answering questions concerning administration of settlement and handling all settlement administration issues arising in the ordinary course of business.

Class Members will have 60 days after the Notice is first mailed to submit their claim forms and 120 calendar days from the date of initial mailing to cash their settlement checks. Any funds that are not cashed or negotiated will be void and a stop-payment will be placed. Nestlé is entitled to any Settlement Fund residuals after all payments are made under the Agreement.

### 3. Opt-Out and Release Provisions

Class Members will have 45 days from the date on the Notice to object to the Settlement and to opt out of the Rule 23 AMWA settlement. Any objections to the Settlement must be served ten (10) days before the final fairness hearing.

Except for those Class Members who object to the Settlement and opt out of the Rule 23

4

AMWA settlement, all Class Members will be bound by the final approval order of the Rule 23 AMWA settlement, the judgment, and the release of the AMWA claims as set forth in the Agreement.

Only Class Members that file a consent form to participate in the settlement will be bound by the final approval order of the FLSA settlement, the judgment, and the release of the FLSA claims as set forth in the Agreement. Accepting Class Members will grant Nestlé a release as specified in the Agreement.

### 4. Incentive Award

The Parties request that a service payment be awarded to Named Plaintiff Barrett in the amount of $4,500.00 in recognition of her role in this litigation as the lead plaintiff, bearing risks on behalf of the class, and most importantly, creating the benefit of a common fund for the class in the amount of $26,500.00, separate from legal fees and costs. In exchange from this service payment, Barrett has signed a general release of all claims against Nestlé.

### 5. Attorneys' Fees and Expenses

The Parties have agreed to an award to Class Counsel of $18,500.00 in attorneys' fees and costs. Because this amount agreed by the parties is over and above that amount which is set aside for the benefit of the Class, this award will not affect any Class Members' recoveries.

## III. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. The Settlement of a Class Action Is Favored And Should Be Preliminarily Approved If It Falls Within The Range of Reasonableness.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors

settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). *See also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them. This may be especially true in the present context -- a protracted, highly divisive, even bitter litigation, any lasting solution to which necessarily depends on the good faith and cooperation of all the parties."); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) ("Especially in the context of class actions, the federal judiciary has a strong policy of promoting and encouraging settlements between litigating parties."); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 U.S. Dist. LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ("The policy in favor of settlement is so strong that such agreements are presumptively valid."); *Newberg on Class Actions* § 11.41 (Fourth) (2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") "This policy is particularly appropriate in class actions: In the class action context in particular, 'there is an overriding public interest in favor of settlement" settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.'" *Id.* (citing *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980)).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). The typical process for approval of class action settlements is described in the *Manual*, §§ 21.632-.634. The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected class members; and

3. A "formal fairness hearing," or final approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, serves the dual function of safeguarding Class Members' procedural due process rights and enabling the Court to fulfill its role as the guardian of the Class Members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (Second) (1985).) "Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a Settlement Agreement only upon a 'finding that it is fair, reasonable and adequate.'" *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011) (quoting Fed. R. Civ. P. 23(e)(2).) This determination is entrusted "to the sound discretion" of the district court. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). When making this determination, "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). "By definition, a fair settlement need not satisfy every concern of the plaintiff Class, but may fall anywhere within a broad range of upper and lower limits. The essence of settlement is compromise . . . a solution somewhere between the two extremes. *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982).

The parties request that the Court take the first step in the settlement approval process and grant preliminary approval of the settlement.

    **B.**    **The Proposed Settlement Negotiated By The Parties Enjoys A Presumption Of Fairness.**

7

At the outset, the settlement should be accorded a presumption of fairness. "A presumption of [fairness] applies to a class settlement reached in arm's-length negotiations between experienced, capable counsel." *Austin v. Metro. Council*, 2012 U.S. Dist. LEXIS 41750, *18-19 (D. Minn. Mar. 27, 2012); see also 4 Newberg § 11.41 (noting that where the settlement is the product of arm's-length negotiations between capable counsel experienced in complex class action litigation, the court should begin its analysis with a presumption that the settlement is fair and should be approved). Courts give "great weight" to and may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987). Additionally, the court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by the agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial." *White v. National Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993).

Here, the settlement is presumed fair and falls within the range of possible approval. The settlement was reached exclusively through arm's length bargaining through numerous written exchanges, telephone conferences, and an in-person meeting. After reaching a complete settlement agreement in principle, the parties turned their attention to documenting the settlement and exchanged draft settlement agreements, forms of Notice of the settlement, and claim forms.

In negotiating the settlement, Plaintiff had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. In Class Counsel's view, the settlement provides substantial benefits to the Class Members, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. On preliminary evaluation, the settlement here is presumptively fair and worthy of preliminary approval.

8

## C. The Settlement Benefits Fall Within The Range Of Possible Recovery.

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Buckley v. Engle*, 2011 U.S. Dist. LEXIS 59022 (D. Neb. June 2, 2011) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)). The factors the courts are to consider are the following:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Moore v. Ackerman Investment Co.*, 2009 U.S. Dist. LEXIS 78725, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009). The preliminary approval determination is not an ultimate determination of whether the settlement is fair, reasonable and adequate, however. Rather, the Court must determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). This necessarily involves a preliminary determination of the settlement's fairness, reasonableness and adequacy. *See Manual*, § 21.632. If the Court finds the settlement "within the range of possible approval," it should then order that the Class Members be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval. *See id.* at § 40.42 (model preliminary approval order).

Here, the settlement provides Class Members with substantial relief, without the delay and expenses of the trial and post-trial proceedings. The Agreement is also fair in that it permits ready access to the Settlement Fund for Class Members. Relief is presumptively available to all

9

current and former non-exempt production employees who worked at Nestlé's Jonesboro factory between January 1, 2016 and July 1, 2018, and who submit a timely, completed Claim and Release Form.

In addition, the incentive award to the Named Plaintiff Sky Barrett is routine, appropriate and serves public policy by encouraging individuals to come forward to protect the rights of others, while at the same time compensating the Named Plaintiff for her time, effort, and inconvenience to represent the interests of absent class members. *See e.g., In re Linderboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, *19 (E.D. Pa. Jun. 2, 2004) (incentive awards of $25,000); Brotherton v. *Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) ($50,000 incentive award); *see also Manual* § 30.42 at n.763. More importantly, because the Named Plaintiff conferred a $26,500.00 benefit upon the absent class (exclusive of fees and costs), equity dictates that she receive an incentive award from the fund for the benefit she has conferred.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A. Notice By First Class Mail is Sufficient When A Large Class is Present.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation* at §§ 21.632, 21.633. In order to protect the rights of absent Class Members, the Court must provide the best notice practicable to class members. *See Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985).

Notice by first class mail is practical when the names and addresses of most of the Class

Members are known. *See Manual for Complex Litigation* at § 30.211. Neither Rule 23 nor due process require receipt of actual notice by all Class Members, rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. Newberg, § 8.04 (citing *Manual for Complex Litigation* at § 30.211; *see also Kandice Simmons & Tamika v. Enter. Holdings*, 2012 U.S. Dist. LEXIS 29366, *12 (E.D. Mo. Mar. 6, 2012) (approving mailed notice to last known addresses of a Settlement Class). If notices are returned as undeliverable, the Claims Administrator will perform a standard skip trace to find a better address for subsequent mailing.

Because the identities of the individual Class Members are known by Nestlé, the parties propose Notice through first class mail. A proposed Notice and Claim Form are included as Exhibits A and D to the Settlement Agreement. Under the circumstances of the present case, this Notice is consistent with applicable law and avoids unnecessary expense that would otherwise diminish the amount of the money available to Class Members. The Court should find that the Class Notice complies with the notice requirements imposed by Rule 23.

### B. The Proposed Form Of Notice Adequately Informs Class Members Of Their Rights In This Litigation.

In an action proceeding under Rule 23(b)(3), the notice must inform each Class Member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice included in Exhibit 1 clearly and accurately discloses the information material to a Class Member's decision whether to accept, object to, or opt out of the settlement. The proposed Notice provides information on the proposed Settlement Class; the

terms and provisions of the Agreement; the relief the settlement will provide; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections. The Notice advises Class Members that the Parties have agreed to an incentive award for the Named Plaintiff and an award of $18,500.00 in attorney's fees and costs.

The Notice is accurate and informs Class Members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form of Notice and direct that notice be given to the class as proposed by the parties.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed settlement and enter the accompanying Order of Preliminary Approval included in Exhibit 1.

Respectfully submitted this 4th day of January, 2019.

| | |
|---|---|
| **SANFORD LAW FIRM, PLLC** | **JACKSON LEWIS, P.C.** |
| Joshua West (AR Bar No. 2012121)<br>Josh Sanford (AR Bar No. 2001037)<br>SANFORD LAW FIRM, PLLC<br>One Financial Center<br>650 S. Shackleford, Ste. 411<br>Little Rock, AR 72211<br>Telephone: (501) 221-0088<br>Facsimile: (888) 787-2040<br>west@sanfordlawfirm.com<br>josh@sanfordlawfirm.com<br><br>***CLASS COUNSEL*** | Eric R. Magnus (GA #801405)<br>1155 Peachtree Street N.E.<br>Suite 1000<br>Atlanta, GA 30309-3600<br>Tel: 404-525-8200<br>Fax: 404-525-1173<br>magnuse@jacksonlewis.com<br>barnesjr@jacksonlewis.com<br><br>***ATTORNEY FOR DEFENDANTS*** |